UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS IRBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV501 CDP |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Dennis Irby is currently incarcerated at the Potosi Correctional

Center in Mineral Point, Missouri.  Irby was convicted of murdering the abusive

husband of his wife's sister.  He received a sentence of life imprisonment without the

possibility of parole for one count of first-degree murder, to run concurrently with a

sentence of life imprisonment for one count of armed criminal action.

Irby has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

He raises nine grounds for relief.  All of these grounds fail on the merits, so I will

deny his petition for the writ.

## I.    Background

This case involves a group of family members, who, according to the state's

theory, acted together to kill Jeff Sexton in order to stop his abuse of Lois Sexton.

Lois' brother and father were originally charged along with petitioner Irby; the

brother was acquitted and later compelled to testify under a grant of immunity.

Petitioner Irby's first trial resulted in a hung jury, and so the conviction challenged

here was a result of the second trial.  The following statement of facts is summarized

from the facts as stated by the Missouri Court of Appeals when it affirmed Irby's

conviction on direct appeal.  *State v. Irby*, 254 S.W.3d 181 (Mo. Ct. App. 2008).

Lois Sexton, who was Irby's wife's sister, was married to the murder victim,

Jeff Sexton.  Jeff had frequently beaten Lois and restrained her from seeking help.  In

early December of 2002 Lois fled, with their child, to a safehouse, but she returned to

Jeff after being told that he was attending an anger management program.  When she

returned Jeff beat her continuously and prevented her from leaving or telephoning for

help.  On December 13, he again beat her severely and threatened to kill her.

Lois and the child escaped the next day, while Jeff was sleeping.  She went to a

gas station and called her one of her sisters in North Carolina.  Her sister purchased

plane tickets for Lois and the child, and Lois' brother, Robert Hoover, drove them to

the airport in St. Louis.  When Lois arrived in North Carolina, she and the child

stayed with her sister Lisa Frein.  Lois' other sister, Laurie, was married to petitioner

Dennis Irby, and they also lived in North Carolina.

Robert Hoover later told police that after Lois left for North Carolina,

petitioner Irby called him and asked where he could get an untraceable cellular phone

and a gun.  Hoover did not procure these items, but Lisa Frein procured a pre-paid

cellular phone.  Hoover testified that Irby came to St. Louis on December 19, and

- 2 -

Hoover took Irby to Lois' car.  Hoover testified that he saw Irby again in St. Louis on December 22.  In his written statement to police, Hoover said that Irby put on gloves and test fired a gun on December 22.  However, at trial, Hoover said that his statement was coerced and that Defendant did not put on gloves or test fire a gun.

On December 28, Irby called Hoover from North Carolina and asked him to move Lois' car because he would be returning to St. Louis and he needed a car.  In Hoover's statement to police, he said that Irby called him in the morning on December 29 and told him "It's done," and asked him to move Lois' car.

On December 31, 2002, Jeff Sexton's parents found his body in his house.  He had been dead one to three days.  He died from two bullet wounds to the head, fired from a .22 caliber rifle.  In Robert Hoover's statement to police, he said that his father, Ervell Hoover, had given Irby a .22 caliber rifle.  Police seized a .22 caliber rifle, .22 caliber ammunition and a cleaning kit from Ervell Hoover's home.

When Robert Hoover was questioned by police, he eventually made a written and a videotaped statement.  At the direction of the police officers, Hoover also called Irby and asked questions provided by the officers.  At trial, after Hoover testified that his written statement was coerced and contained falsehoods, the state was allowed to introduce Hoover's videotaped statement, over Irby's objections.  The state also played the audio recording of the telephone conversation between Hoover and Irby.

Lisa Frein did not appear at the trial to testify.  Instead, the state introduced a

transcript of her testimony from the earlier trial.  The state had unsuccessfully

requested that a North Carolina court compel her testimony.  Irby's counsel objected

to the introduction of the transcript on the grounds that the state failed to make an

adequate showing of its efforts to obtain Frein's appearance.  The court overruled the

objection and admitted the transcript.  As part of reading the transcript from the prior

trial, the state played the videotaped statement that Frein made to police, which had

also been played as part of her testimony at the initial trial.  During deliberation, the

jury asked to see the videotaped statements of Hoover and Frein again.  Over Irby's

objection, the court replayed the statements to the jury in the courtroom.  *See State v.

Irby*, 254 S.W.3d at 185-87.

The jury found Irby guilty of both charges, and the court sentenced him to life

without parole.  Irby's conviction was affirmed on direct appeal.  *State v. Irby*, 254

S.W.3d 181(Mo. Ct. App. 2008).  Irby then filed a *pro se* motion in the trial court for

post-conviction relief under Missouri Rule 29.15.  Counsel was appointed to

represent Irby, and appointed counsel filed an amended motion for post-conviction

relief.   The motion court held an evidentiary hearing and denied all of Irby's claims.

The denial of post-conviction relief was affirmed in a *per curiam* unpublished

opinion.  *Irby v. State*, 337 S.W.3d 29 (Mo. Ct. App. 2011) (Resp. Exh. Z).

## II.   <u>Grounds Raised</u>

Irby now seeks federal habeas corpus relief, asserting the following nine

grounds:

(1)   Irby's trial counsel was ineffective for failing to investigate witnesses and secure evidence that would have established Irby's alibi defense.

(2)   Irby's trial counsel was ineffective for failing to seek a change of venue or a new venire panel, because some potential jurors indicated they had heard of the case in the news.

(3)   Irby's trial counsel was ineffective for failing to request that the reading of Lisa Frein's previous trial testimony be transcribed for the record.

(4)   Irby's trial counsel was ineffective for failing to make specific foundation objections to the recorded telephone call between Irby and Robert Hoover.

(5)   Irby's right to confront witnesses was violated by the trial court's decision to allow the reading of Lisa Frein's previous trial testimony because the government did not demonstrate that it had exercised reasonable diligence to secure her presence at trial.

(6)   Irby's due process rights were violated by the trial court's decision to allow the introduction of Robert Hoover's videotaped statements into evidence because they constituted improper bolstering.

(7)   Irby's due process rights were violated by the trial court's decision to allow the jury to view Robert Hoover's videotaped statements during deliberations because they constituted improper bolstering.

(8)   Irby's due process rights were violated by the trial court's decision to allow the introduction of Lisa Frein's videotaped statements into evidence because they constituted improper bolstering.

(9)     Irby's due process rights were violated by the trial court's decision to allow the jury to view Lisa Frein's videotaped statements during deliberations because they constituted improper bolstering.

## III.  **Discussion**

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In *Shafer v. Bowersox*, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result.  A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (quoting 28 U.S.C. § 2254(d)(2)) (citing 28 U.S.C. § 2254(e)(1); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

As the Supreme Court recently reiterated, "State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*,  No. 12-414, 2013 WL 5904117 at * 4 (November 5, 2013).   A federal court should not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Id.*

Claims of  ineffective assistance of counsel must be reviewed under the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  According to *Strickland*, a petitioner alleging ineffective assistance of counsel must make two showings. *Id.* at 687.  First, the petitioner must "show that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness." *Id.* at 687-88.  In this regard, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

- 7 -

*Id.* at 689.  The Court in *Strickland* cautioned that "judicial scrutiny of counsel's performance must be highly deferential."  *Id.*  When considering a habeas claim of ineffective assistance of counsel, a federal court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  *Titlow,* 2013 WL 5904117 at * 2.

In addition to showing that counsel's assistance was deficient, a petitioner must also demonstrate that he or she was actually prejudiced.  *Id*. at 687.  According to *Strickland*, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ."  *Id.*  In order to satisfy the "actual prejudice" standard, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

<u>Ground 1:  Failure to Investigate and Establish an Alibi Defense</u>

In Ground 1, Irby argues that he received ineffective assistance of counsel because his trial counsel failed to investigate witnesses and secure evidence that would have supported an alibi defense.  Irby raised the same claim in his post-conviction motion and on appeal after its denial.  The Missouri Court of Appeals summarized the evidence relevant to this claim as follows:

> Cellular telephone records reveal that Irby traveled west from North Carolina to St. Louis on December 28, and east from St. Louis to North Carolina on December 29.  Victim's body was discovered on December

31.   While a neighbor of Victim testified for the defendant that she thought she heard gunshots or fireworks around midafternoon on December 29, the autopsy was unable to pinpoint the time of Victim's death to a timeframe narrower than "between one and three days before he was found":  i.e., between December 28 and December 30.

Irby contends that his trial counsel was ineffective for failure to investigate or to present evidence at trial showing that Irby was in North Carolina on December 29, asserting that this evidence would have established an alibi for the murder.  During the Rule 29.15 evidentiary hearing, Irby introduced a receipt from JR Cigar in Burlington, North Carolina dated December 29, 2002, time stamped for 7:53 p.m., issued by a cashier "Tina W.," and indicating a case purchase.  Irby testified that he and Tina W. knew each other, but he did not present evidence that she would have testified to his presence in North Carolina on December 29 had she been called to testify at trial.  Irby also testified that he had receipts from a Steak 'n Shake in North Carolina during that time, and had interacted with a North Carolina neighbor on or about December 29.  He neither entered into evidence any Steak 'n Shake receipts, nor submitted the name of or testimony of the neighbor.

Trial counsel agreed that he did not investigate Irby's alibi, because two years had already passed since the murder occurred.  He noted that a major problem with establishing an alibi for Irby was that there was no specific time of death, and any alibi would have had to cover the entire three-day period during which Victim could have died.  Further, when he originally asked Irby who had been the cashier working at JR Cigars when he was there, Irby had told him that he did not know.  Without the cashier from the cigar store to testify, Irby would have had to have taken the stand to establish a foundation for the receipt, which trial counsel did not want to do.

(Resp. Exh. Z, at 11-12).

Applying the *Strickland* standard, the Missouri Court of Appeals concluded that Irby's trial counsel was not ineffective for failing to further investigate Irby's alleged presence in North Carolina on December 29.  Specifically, the appellate court stated:

Trial counsel's decision not to investigate Irby's alleged presence in North Carolina on December 29 was reasonable.  Because the murder could have occurred anytime between December 28 and December 30, any evidence showing Irby's presence in North Carolina on December 29 did not conclusively establish an alibi to Victim's murder. . . .

Moreover, Irby failed to present evidence supporting his claims for ineffective assistance. . . .  While Irby claimed that Tina W. knew him, he did not submit testimony or an affidavit from her indicating that she remembered seeing him on December 29.  Likewise, he did not submit an affidavit or testimony from the neighbor or any Steak 'n Shake employees he asserts could prove his alibi. . .  Without proof that these witnesses could have provided him an alibi, we fail to see error in the motion court's conclusion that trial counsel was not ineffective.

(Resp. Exh. Z, at 12-13).

The conclusion of the Missouri Court of Appeals that Irby did not receive ineffective assistance of counsel based on the failure to further investigate this alleged alibi defense was not contrary to or an unreasonable application of federal law.  Only in rare circumstances has the Eighth Circuit Court of Appeals recognized "counsel's failure to interview potential alibi witnesses sufficient to warrant a finding of ineffective assistance of counsel."  *Cox v. Wyrick*, 642 F.2d 222, 226 (8th Cir. 1981).  I conclude that this case does not present such exceptional circumstances to support a finding of ineffective assistance of counsel.

Courts "must evaluate counsel's decision not to interview or call a particular witness from the perspective of counsel at the time the decision was made."  *Parker v. Bowersox*, 94 F.3d 458, 461 (8th Cir. 1996).  In this case, trial counsel testified at the post-conviction hearing that he did not hear about Irby's alleged alibi evidence

- 10 -

through the JR Cigar receipt, his presence at Steak 'n Shake, or his neighbors in North Carolina until two years after the murder occurred. He never received the receipt from Irby, and Irby told him that he did not know the cashier who was present at JR Cigar when he made his purchase. On these facts, it was not unreasonable for counsel to believe that the only proper evidentiary basis for admission of the receipt would be for Irby to personally testify about his purchase, and because Irby chose not to testify in his defense, this receipt would not be admissible. Counsel's decision not to further investigate this alleged alibi was not unreasonable trial strategy.

At the post-conviction hearing, Irby did present the receipt demonstrating that the cashier's name was Tina W., and he testified that he and Tina W. knew each other. But he did not present any affidavit or testimony from Tina W. that she had personal knowledge of this transaction or stating what her testimony would have been had she been called to testify at trial. He also failed to present any receipts from Steak 'n Shake or to present testimony from any neighbors who could have allegedly testified to his presence in North Carolina. Irby has presented no evidence that would overcome the strong presumption that counsel's performance was adequate.

Furthermore, even if Irby's counsel should have further investigated this alleged alibi, Irby was not prejudiced by his failure to do so. Irby is correct that the exact time of Sexton's death was never established at trial. However, the evidence presented by the government at trial through phone records showed that Irby left St.

- 11 -

Louis around 6:00 a.m. on December 29, which would have allowed him time to return to North Carolina and make the purchase at JR Cigar that evening even if he had killed Sexton in the morning.  Therefore, this evidence would not contradict the government's theory of when the murder occurred.

Additionally, Irby's counsel did present other evidence to support an alibi defense, including testimony from Lisa Frein stating that she called Irby on the morning of December 29 on his office phone number and spoke to him, which would support an argument that he was present in North Carolina that morning.  He also presented evidence from a neighbor of Jeffrey Sexton's, who testified that she heard gunshots on the afternoon of December 29, which would support a later time of death than what was presented by the government's evidence.  The jury heard this conflicting evidence.  Irby has not demonstrated that the outcome of his trial would have been different had the additional evidence been presented, because it did not undermine the government's theory of the case and other alibi evidence was presented by Irby's counsel, which the jury chose not to believe.  Therefore, because Irby has failed to demonstrate that trial counsel's performance was deficient and that he was prejudiced as a result of such performance, Ground 1 is without merit.

Ground 2:  Failure to Seek a Change of Venue or to Strike the Venire Panel

In Ground 2, Irby claims that he received ineffective assistance of counsel because his trial counsel failed to seek a change of venue or to strike the entire venire

panel due to the high level of pretrial publicity surrounding his case.  Irby raised the

same claim in his post-conviction motion and on appeal after its denial.  Applying the

*Strickland* standard, the Missouri Court of Appeals concluded that Irby's counsel was

not ineffective for failing to seek a change of venue or to strike the venire panel.

Specifically, the court stated:

> [D]uring voir dire, 29 of the pool of 48 venirepersons stated that they
> had heard of the charged crime through various media outlets.  Each
> person who had heard of the case was questioned by the judge.  Several
> venirepersons noted that their memories of the news coverage were
> vague because the crime had occurred a long time ago.  With the
> exception of three, who were all struck for cause, each venireperson who
> had previously heard the facts of the crime stated that they would be able
> to set aside what they had heard and would base the verdict on the
> evidence presented at trial.  This record is sufficient to establish that Irby
> received an unbiased jury. . . . In the absence of evidence suggesting that
> the jurors in this case had "fixed opinions such that they could not judge
> impartially whether the defendant was guilty," trial counsel was not
> obligated to request a change of venue.  We see no error in the motion
> court's denial of Irby's Rule 29.15 motion. . . .
>
> Additionally, at the evidentiary hearing on the Rule 29.15 motion,
> trial counsel stated that he did not move for a change in venue despite
> the media exposure, because he did not want to risk a worse venire pool
> in a different county.  The motion court found that trial counsel had
> articulated reasonable strategic reasons for not requesting a change in
> venue, and we see no clear error in this finding. . . . Even though trial
> counsel's reasoning was, in hindsight, unsuccessful, we will not deem
> him ineffective. . . .

(Resp. Exh. Z, at 7-8).

The conclusion of the Missouri Court of Appeals that Irby did not receive

ineffective assistance of counsel based on the failure to seek a change of venue or

strike the venire panel was not contrary to or an unreasonable application of federal law.  Except in extreme cases, prejudice from pretrial publicity is not presumed. *Skilling v. United States*, 130 S. Ct. 2896, 2915 (2010).  "Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*." *Id.* at 2914-15.  The Supreme Court has set forth several factors for considering whether a case is "extreme" so as to warrant a presumption of prejudice:  the size and characteristics of the community in which the crime occurred, the type of information revealed by the media, the length of time between the crime and the trial, and whether the jury acquitted the defendant of any counts.  *Id.* at 2915-16.  Reviewing courts greatly defer to a trial court's assessment of juror impartiality and credibility because of its "more intimate and immediate basis for assessing a venire member's fitness for jury service." *Id.* at 2918.

In this case, the crime occurred in St. Louis County, the largest county in the State of Missouri.  Although there was a great deal of media attention, the only arguably prejudicial information revealed by the media centered around Irby's confession to the unrelated murder of his parents in 1964.  This trial also occurred in 2005, almost three years after the murder took place in December 2002.  These facts demonstrate that a presumption of prejudice is not appropriate in this case, as it is not of the "extreme" nature contemplated by the Supreme Court.

Absent a presumption of prejudice, this court must analyze whether any actual prejudice infected the jury process.  *Id.* at 2917.  As summarized by the Missouri Court of Appeals, the seated jury panel did not demonstrate any bias or impartiality. Four of the twelve jurors had heard something about the case, but did not form an opinion about it.  Another two jurors had heard something, but could not remember if they had formed an opinion about the case when they heard about it.  All twelve jurors indicated that they could set any opinions aside and judge the case solely based on the evidence presented in the courtroom.  Irby does not allege any juror misconduct or pinpoint any jurors who should have been disqualified for cause.  Irby has failed to demonstrate that his jury was biased by pretrial publicity.   Therefore, his counsel's decision not to move for a change of venue or strike the venire panel was not deficient, and Irby was not prejudiced.[1]  The claim of ineffective assistance of counsel in Ground 2 thus fails on the merits.

Ground 3:  Failure to Request that Lisa Frein's Prior Testimony be Transcribed

In Ground 3, Irby claims that he received ineffective assistance of counsel because his trial counsel failed to request that the prosecution's reading of Lisa Frein's prior trial testimony be transcribed for the record on appeal.  Applying the *Strickland* standard, the Missouri Court of Appeals concluded that Irby's counsel was

---

[1] Irby's trial counsel testified at the post-conviction hearing that he did not move for a change of venue because of the risk of moving to a much smaller, more rural venue, as is often the situation with transferred cases.  This was also a sufficient strategic reason to defeat the claim of ineffective assistance for failure to move for a change of venue or to strike the venire panel.

not ineffective for failing to request that this testimony be transcribed for the record.

The appellate court explained:

> Irby asserted for the first time . . . in his motion for post-conviction relief that during the reading of Transcript 1, the portion of Frein's testimony regarding a telephone conversation she made to him at his North Carolina office on December 29, 2002 may have not been read to the jury.  Irby asserts that his trial attorney was ineffective in not requesting that the reading of Transcript 1 be transcribed by the court reporter as it was read to the jury.  At the Rule 29.15 evidentiary hearing, both trial counsel and Irby testified that they read along with Transcript 1 as it was being read to the jury.  Trial counsel made no objections regarding omissions during the reading.  As well, on Irby's direct appeal, appellate counsel entered into a stipulation with the State agreeing that Transcript 1 was a "true and accurate copy of Lisa Frein's testimony as used at [Irby's] criminal trial, including markings indicating which portions were not read."  Last, a copy of Transcript 1, submitted to the motion court during the post-conviction-relief proceedings, includes the section allegedly omitted at trial.  The motion court found no merit to Irby's claim of ineffective assistance of counsel, because he failed to prove that he was prejudiced by this alleged omission, because there were, in fact, no omissions.
>
> Upon review of the entire record, we cannot say that the findings and conclusions of the motion court were clearly erroneous.  Rule 29.15(k).  Transcript 1 contains the portion Irby now asserts was omitted.  There were no objections at trial regarding omissions, although both Irby and trial counsel were following along with Transcript 1 as it was read.  Further, Irby did not object to his appellate counsel's stipulation of the accuracy of the reading.  The trial court found no omissions, and we see no error in this finding. . . . We defer to the motion court's superior ability to judge the credibility of witnesses. . . .

(Resp. Exh. Z, at 13-14).

The conclusion of the Missouri Court of Appeals that Irby did not receive

ineffective assistance of counsel based on the failure to request that Lisa Frein's

testimony be transcribed for the record was not contrary to or an unreasonable

application of federal law.  Although Irby testified at his post-conviction hearing that

part of the testimony contained in the notated transcript was not read to the jury, he

also testified that he and his attorney followed along with the transcript as it was read

at trial.  Neither Irby nor his trial counsel claimed at any point during trial that part of

the testimony had been omitted by the prosecution.  In his reply brief, Irby argues that

this is merely an additional example of the ineffectiveness of his trial counsel, but he

does not even point to a particular portion of the transcript that he now says was not

read.  Furthermore, Irby does not claim that his appellate counsel was ineffective for

stipulating that the notated transcript provided to the court on appeal – which the

appellate court determined to be an accurate representation of the testimony that was

read to the jury at trial – was correct.  Thus, Irby has failed to present any evidentiary

basis to support his claim that the Missouri Court of Appeals erred in determining

that the transcript was an accurate copy of what was read to the jury during trial.

Because Irby has failed to demonstrate that the transcript was not an accurate

copy of what the prosecution read during trial, he cannot demonstrate that he was

prejudiced in any manner by the failure to have that reading transcribed for the

record.  There is no basis to conclude that his appeal would have been any different

had there been a transcribed record of what was read, as opposed to the stipulated

copy of the transcript that was provided to the appellate court.  Irby cannot show

deficient performance or prejudice under *Strickland*, and so this claim of ineffective assistance is without merit.

<u>Ground 4:  Failure to Make a Specific Foundation Objection to the Recorded Call</u>

In Ground 4, Irby's final claim of ineffective assistance, he claims that his trial counsel failed to make a specific foundation objection to the admission of the recorded phone conversation between Irby and Robert Hoover.  Applying the *Strickland* standard, the Missouri Court of Appeals concluded that Irby's counsel was not ineffective for failing to raise a specific foundation objection to this evidence. The appellate court stated:

> Irby's trial counsel objected to the admission of the audiotape but did not further specify the grounds for his objection after the court overruled his first objection.  During the evidentiary hearing on the Rule 29.15 motion, he testified that his reason for not specifying his objection was that in his experience, a jury views objections with suspicion, believing either that the attorney is hiding something or wasting the jury's time. Decisions regarding objections at trial are left to the judgment of counsel. . . . Trial counsel's mere failure to object to the admission of evidence does not constitute ineffective assistance of counsel unless the failure denied the movant his right to a fair trial. . . .
>
> Trial counsel's decision was part of a reasonable trial strategy, and, further, it did not deny Irby his right to a fair trial.  Contrary to Irby's assertions, the audiotape between Irby and Hoover was properly admitted, so any objection by trial counsel would not have been granted. . . . Whether a sufficient foundation has been established for a tape recording is within the broad discretion of the trial court. . . . The party offering recorded evidence must show that it is an accurate and faithful representation of what it purports to show. . . . Foundation may be established through the testimony of any witness who is familiar with the subject matter of the exhibit and competent to testify from personal experience. . . .

- 18 -

Here, Detective Paul Banta testified that he was present when the recording was made; he identified the date and location of the recording, and the parties involved; he identified the physical tape; and he testified that he had listened to the recording prior to his testimony, that it accurately reflected the recorded conversation, and that no changes had been made.  This was sufficient to establish a proper foundation for the tape recorded conversation. . . .

(Resp. Exh. Z, at 5-6).

The conclusion of the Missouri Court of Appeals that Irby did not receive ineffective assistance of counsel based on the failure to make a specific foundation objection to the recorded conversation was not contrary to or an unreasonable application of federal law.  The state court concluded that even a specific foundation objection would not have had any merit because the recorded conversation was properly admissible, given the foundation laid by the prosecution before playing the tape, and so counsel could not have been ineffective for failing to make a meritless objection.  Irby's claim therefore essentially challenges the evidentiary ruling by the trial court that the recorded conversation was admissible.

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker*, 94 F.3d at 460.  Irby has failed to demonstrate that the result of his trial would have been different had this evidence been excluded given the weight of evidence against him and the minor role that this conversation played in the case

- 19 -

against him.  Because Irby has not demonstrated that the state court's evidentiary ruling was error, his counsel's performance was not deficient for failing to make a meritless objection to this evidence.

Furthermore, Irby's counsel also testified at the post-conviction hearing that he chose not to further object to the tape for strategic reasons.  "Under *Strickland*, there is a strong presumption that an attorney's performance is professionally reasonable," and "decisions related to trial strategy are virtually unchallengeable." *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir. 1996).  Irby's trial counsel testified that he chose not to make a third objection to the recorded testimony because it could draw additional negative attention to that evidence and make it appear as though the defendant has something to hide.  This strategy at trial was not contrary to what other reasonable attorneys may have done regarding this evidence.  Though there were alternative strategies available to Irby and his counsel at the time of trial, his counsel's choice of strategy must be given great deference, even if Irby now believes that a different strategy may have been more beneficial.  Because Irby has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced by his performance, Ground 4 is also without merit.

<u>Ground 5:  Trial Court's Admission of Lisa Frein's Prior Testimony Absent a</u>
<u>Showing of Due Diligence to Secure her Presence at Trial</u>

In Ground 5, Irby argues that the trial court erred in allowing the prosecution to read Lisa Frein's previous trial testimony into evidence absent a showing that the state had exercised reasonable diligence to secure her presence at trial.  He claims that the admission of this evidence violated his rights under the Confrontation Clause because the state did not adequately show that Lisa Frein was unavailable to testify at trial.

Irby presented this claim to the Missouri Court of Appeals on direct appeal, but that court found that many of Irby's arguments were not properly developed in the briefs or adequately supported by citations to authority.  Nonetheless, it considered much of this claim on the merits, so I will consider it in my review as well.  *See Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir. 1997) ("When a state court decides an issue on the merits despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a habeas court.").

The Missouri Court of Appeals concluded that the trial court did not abuse its discretion in determining that the state had made a good faith effort and had exercised reasonable diligence to obtain Lisa Frein's presence at trial.  Specifically, it explained:

> Here, the State obtained a certificate from the trial court asking a North Carolina court to issue a summons directing Ms. Frein to appear.

- 21 -

The North Carolina court refused to order Ms. Frein to appear, and entered an order to that effect.  Defendant argues multiple reasons why the certificate obtained by the State did not constitute due diligence.

First, Defendant offers a conclusory argument that the State did not exercise due diligence because it did not send someone to North Carolina to argue for Ms. Frein's appearance.  Defendant cites no authority to support this proposition, and we reject the implication that, to satisfy due diligence, the State must send someone personally to argue for the appearance.  Next, Defendant argues that the certificate was improper because it did not state the number of days Ms. Frein would be required to appear.  Defendant did not make either of these arguments before the trial court when he objected to Ms. Frein's testimony.

Indeed the statute does state that the court may issue the certificate stating among other things the number of days the witness would be required.  Here, the certificate from the trial court did explain in detail the testimony Ms. Frein was expected to give and the facts that would be proven by her appearance.  In addition, it specified the date trial was expected to begin and directed the witness to contact the prosecutor regarding the days on which she would testify.  Ms. Frein had testified in Defendant's previous trial, therefore she was aware of the amount of time involved.

Defendant also makes other arguments regarding the admission of Ms. Frein's testimony, but these arguments are not supported with citation to authority, therefore we decline to address them.

Thus, we cannot say the trial court abused its discretion when it determined that the State had made a good faith effort, exercising reasonable diligence to obtain the presence of the witness.

*Irby*, 254 S.W.3d at 193-94.

The decision of the Missouri state court regarding the state's exercise of due diligence to secure Lisa Frein's presence at trial was not contrary to or an unreasonable application of federal law.  The Confrontation Clause of the Sixth Amendment prohibits the use of a prior testimonial statement of a witness unless the witness is unavailable to testify and the defendant had a prior opportunity for cross

examination.  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  Here, Irby had

the opportunity to cross-examine Lisa Frein in his first trial, and so the only question

is whether she was unavailable for purposes of testifying in this trial.  The Supreme

Court has held that "a witness is not 'unavailable' for purposes of the . . . exception to

the confrontation requirement unless the prosecutorial authorities have made a good-

faith effort to obtain his presence at trial."  *Barber v. Page*, 390 U.S. 719, 724-25

(1968).

In this case, the prosecution used the method available to it by statute under the

Uniform Law to Secure the Presence of Witnesses from Within or Without State in

Criminal Proceedings, Mo. Rev. Stat. § 491.420, in an attempt to compel Lisa Frein's

presence from North Carolina.[2]  The state submitted a petition and affidavit under this

statute, and the trial court granted that request and issued a certificate requesting Lisa

Frein's attendance.  This constituted a good-faith effort to secure the witness's

---

[2] Irby argues that the prosecution failed to comply with the exact requirements under the statute, namely, stating the number of days that the witness's presence would be required and that appropriate payment would be rendered to the witness for time and travel expenses.  In the government's petition under this statute, it specifically states that "her testimony will be needed on or about October 18, 2005, and perhaps through October 19, 2005," and that "the State of Missouri shall provide the witness with round trip transportation, food, and housing as provided by statute." (Resp. Exh. L, at 35-36).  Though these particular details were omitted by the judge in the certificate presented to the North Carolina court, the North Carolina court treated the certificate as one being made under this Uniform Act and did not cite any of these omissions in its reasons for denying the request.  Furthermore, even if the trial court's certificate failed to comply with the exact requirements under the statute, the appellate court's determination that the certificate nonetheless satisfied due diligence constitutes a Missouri state court's determination of Missouri state law, which is not cognizable in a federal habeas corpus proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

- 23 -

presence at trial.  It would not be reasonable to require the prosecution to travel to

North Carolina to argue for issuance of the out-of-state subpoena.  Rather, the state

used the method provided by law to compel an out-of-state witness to testify at trial,

and the prosecution was not required to do anything further in order to support a

finding of a good-faith effort.  The mere fact that the North Carolina court refused to

compel Lisa Frein's attendance does not negate the prosecution's efforts to secure her

presence.  Therefore, because Lisa Frein was "unavailable" under federal law, the

reading of the transcript of her prior trial testimony did not violate Irby's rights under

the Confrontation Clause.

<u>Grounds 6-9:  Robert Hoover's and Lisa Frein's Videotaped Statements</u>

In Grounds 6 through 9, Irby argues that the playing of the videotaped

statements of Robert Hoover and Lisa Frein during the prosecution's case in chief

and during jury deliberations deprived him of due process.  Specifically, he argues

that the government's argument for admission of these videotaped statements was to

allow the jury to view Hoover's and Frein's conduct and demeanor during their

statements, based on the witnesses' allegations that their statements were coerced by

police and were not truthful.  Irby raised the same claims on direct appeal to the

Missouri Court of Appeals.  The appellate court declined to conduct a plain error

review of Ground 8 – the claim related to the playing of Lisa Frein's videotaped

statement during the prosecution's case in chief – on the basis that the claim was not

preserved.  Thus, the first issue to resolve is whether Ground 8 is properly before this court on habeas review.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  Under Missouri law, "allegations of trial court error, reviewable on direct appeal, are not cognizable in a post-conviction motion."  *Oden v. State*, 320 S.W.3d 198, 201 (Mo. Ct. App. 2010).  Failure to raise a claim in a post-conviction appeal results in abandonment of that claim.  *Sweet*, 125 F.3d at 1150 (citing *Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996)).

A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies."  *Sweet*, 125 F.3d at 1151 (citation omitted) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."  *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)).  "Fairly present" means that state prisoners are required to "'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional

issue' . . . ." *Id*. at 411-12 (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)).  A state law claim raised in state court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  *Id*. at 412 (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)).

The Supreme Court has held that a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  The Court explained that "'the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  *Id*. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Furthermore, to establish actual prejudice, a petitioner must demonstrate that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982).  In order to assert the fundamental miscarriage of justice exception, "a petitioner must make a showing of actual innocence."  *Weeks v. Bowersox*, 119 F.3d 1342, 1350 (8th Cir. 1997) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

The Missouri Court of Appeals declined plain error review of the argument presented in Ground 8 on direct appeal, holding that there were not facially

substantial grounds for finding a manifest injustice occurred because the videotape was properly admitted into evidence.  *Irby*, 254 S.W.3d at 192-93.  Therefore, this claim is procedurally defaulted.  *See Toney v. Gammon*, 79 F.3d 693, 699 (8th Cir. 1996) ("[A] properly limited plain error review by a state court does not cure procedural default.").

Irby alleges ineffective assistance of counsel as the cause for his procedural default.  Specifically, he argues that had trial counsel made an appropriate objection, his argument would have been cognizable on direct appeal.  Irby did raise this allegation of ineffectiveness of counsel in his post-conviction motion, although he did not raise it on appeal from the denial of that motion.  Although it is not properly before this court as a substantive claim of ineffective assistance of counsel, for purposes of simplicity I will assume, without deciding, that this may be sufficient to excuse Irby's procedural default.  In any event, because the analysis for this ground is the same as the analysis of Ground 6, I will consider Ground 8 on the merits.

As to the claims in Grounds 6 and 7, the Missouri Court of Appeals held that the trial court did not err in allowing Robert Hoover's videotaped statements to be shown to the jury in the prosecution's case in chief and during jury deliberations. The court stated:

> Although Mr. Hoover admitted to making certain incriminating statements to the police, Mr. Hoover testified at trial that these statements were false and coerced by police. . . .

. . . [We] find that Mr. Hoover's videotaped statement was relevant to enable the jury to determine if his trial testimony or the videotaped statement was the truth.   The videotape showed Mr. Hoover's interaction with the officers and the spontaneity of his statements, or lack thereof.   Thus, the evidence was logically relevant, as it tended to show which of Mr. Hoover's statements were truthful. . . .

The evidence was also legally relevant, in that the probative value outweighed the prejudicial effect.   Defendant argues that the evidence was highly prejudicial because it had already been presented to the jury during direct examination, which resulted in impermissible bolstering of Mr. Hoover's testimony.

. . . .

. . . [H]ere the videotaped statement was not consistent with Mr. Hoover's trial testimony.   At trial Mr. Hoover testified to facts that were contained in the videotape, but a great deal of his trial testimony concerned how the police had coerced him and in what way the written and videotaped statements were false.   Thus, the videotape impeached his in-trial testimony that he was coerced by police, by showing his demeanor and interaction with the police during his questioning. . . .

. . . .

In his second point, Defendant contends that the trial court erred in replaying Mr. Hoover's videotaped statement during jury deliberations because it was not relevant evidence and impermissibly bolstered Mr. Hoover's testimony.   Above, we determined that the videotaped statement was properly admitted into evidence.   When an exhibit is properly admitted into evidence, it is within the sound discretion of the trial court whether the exhibit will be shown to the jury during deliberations. . . . The trial court did not send the videotape to the jury room, but controlled the jury's access to the videotape by playing it in the courtroom only once.   Thus, the trial court did not abuse its discretion in allowing the jury to view the videotape during deliberations.

*Irby*, 254 S.W.3d at 190-91.  Similarly, as to Grounds 8 and 9, the Missouri Court of Appeals analyzed the admission and playing of Lisa Frein's videotaped statement in declining plain error review, as follows:

- 28 -

In testimony similar to that of Mr. Hoover, Ms. Frein claimed that the police threatened her and her family to cause her to lie in her written statement.  She stated that the officers threatened her with the loss of her son and told her that her son was missing and they would help her find him if she finished the statement.  She testified extensively that she was coerced into making the statement and that the police had "suggested" certain things for her to include.  As with the videotape of Mr. Hoover, Ms. Frein's videotape was admissible to impeach her testimony that she was threatened and coerced into making false statements. . . .

In his next point, Defendant argues that the trial court erred in overruling Defendant's objection to the replaying of Ms. Frein's statement during the jury deliberations.  Defendant argues that the videotape improperly bolstered evidence against him.

When an exhibit is properly admitted into evidence, it is within the sound discretion of the trial court whether the exhibit will be shown to the jury during deliberations. . . . Above, we determined that Ms. Frein's videotaped statement was properly admitted into evidence.  The trial court, therefore, had discretion to allow the jury to see the statement again during deliberations.  As with Mr. Hoover's statement, the trial court controlled the jury's access to the videotape by playing it in the courtroom only once.  We therefore find that the trial court did not abuse its discretion in allowing the jury to view the videotape during deliberations. . . .

*Irby*, 254 S.W.3d at 192-93.

The decision of the Missouri state court regarding the playing of Hoover's and Frein's videotaped statements for the jury during the prosecution's case in chief and during jury deliberations was not contrary to or an unreasonable application of federal law.  Irby's allegations essentially amount to a claim of evidentiary error by the state court, which Irby is trying to turn into a due process violation.  As stated above, an evidentiary claim can only rise to the level of a constitutional violation that could support habeas relief if it was "so conspicuously prejudicial or of such magnitude as

- 29 -

to fatally infect the trial and deprive the defendant of due process." *Parker*, 94 F.3d at 460.

Irby has failed to demonstrate that the admission of this evidence and its viewing by the jury deprived him of due process.  Both Hoover and Frein put their conduct and demeanor at issue by testifying that they were coerced by the police into making various statements about the defendant.  Contrary to Irby's argument that this evidence merely constituted improper bolstering of the witnesses' credibility, these videotaped statements were introduced only after these witnesses placed their credibility at issue by making allegations of coercion.  This evidence was therefore extremely relevant for the jury in making a credibility determination as to the truthfulness of their testimony at trial and in statements made to the police.  Furthermore, as they were relevant and therefore properly admitted into evidence in the prosecution's case in chief, showing the videotaped statements one additional time during jury deliberations did not violate Irby's due process rights.  Accordingly, because Irby has not demonstrated that his due process rights were violated by the admission of this evidence, Grounds 6, 7, 8, and 9 are without merit.

## IV.   **Certificate of Appealability**

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A).  To grant such a

certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). I find that reasonable jurists could not differ on any of Irby's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Dennis Irby for writ of habeas corpus [#1] pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2013.

- 31 -